Filed 7/3/14  P. v. Delacruz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058118 |
| v. | (Super.Ct.No. SWF10001241) |
| MICHAEL WAYNE DELACRUZ, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Affirmed.

Raymond M. DiGuiseppe, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Barry Carlton, and Adrianne S. Denault, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

On January 17, 2013, a jury convicted defendant and appellant Michael Wayne Delacruz of the first degree murder of Ruben A. under Penal Code[1] section 187, subdivision (a), and found true a drive-by shooting special circumstance under section 190.2, subdivision (a)(21) and a personal gun use enhancement under sections 12022.53, subdivision (c) and 1192.7, subdivision (c)(8). The trial court sentenced defendant to life without the possibility of parole and imposed a consecutive twenty-year sentence for the firearm enhancement.

On appeal, defendant contends that the trial court erred in admitting gang evidence. For the reasons set forth below, we affirm the judgment.

# II

## STATEMENT OF FACTS

In the early morning hours of May 31, 2010, Ruben A. (the victim), who was fourteen years old at the time, was with some friends outside his cousin's apartment on N. Alessandro Street in Hemet. Another apartment occupant was outside smoking when a sport utility vehicle (SUV) passed the apartment complex; defendant kicked the rear passenger door open and fired double aught buckshot from a shotgun. All nine shotgun pellets from the cartridge hit the victim in his torso, shredding his liver, splitting his right kidney, and severing his spinal cord. The victim died.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

One of the victim's friends, in the apartment complex's front yard, fired birdshot from a shotgun at the SUV as it drove away. The BB-sized birdshot struck the SUV's passenger side rear taillight, side panel, and the inside of the rear passenger door. Defendant was struck in his right arm and left hand.

Defendant was arrested a few days later. After being read his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, defendant spoke with detectives. Defendant admitted that he fired the shotgun that killed the victim. Defendant's interview was videotaped and played for the jury.

## III

## ANALYSIS

A.      *The Trial Court Properly Admitted Evidence*

Defendant contends that the trial court prejudicially erred in admitting evidence that defendant's brother yelled "Hemet Trece," prior to and during the drive-by shooting, and allowing a detective to testify that Hemet Trece was the name of a criminal street gang. Even if the evidence were properly admitted, defendant contends that the admission of this evidence was prejudicial because without this evidence, the jury could have accepted defendant's self-defense or imperfect self-defense theory.

3

1. *Background*

In his interview with detectives, defendant said his fiancée Maria Lemus[2] and his brother Fernando Becerra had gone to Depot Deli and encountered the victim and his friends. According to defendant, someone in the group tried to punch Becerra. When Lemus tried to drive away in her SUV, they blocked her way, called her names, and threw beer cans at the SUV.

Shortly before the shooting, Lemus drove her SUV to the apartment complex where the victim was staying. Becerra jumped out of the SUV shouting "Hemet Trece," obscenities, and other things. Becerra warned that he would be back before he got into the SUV and it drove away.

Defendant was home asleep when Lemus and Becerra came and got him. With Lemus driving, they returned to the apartment complex. When they turned onto Alessandro Street, defendant was sitting in the rear passenger seat. They passed a male pedestrian, and defendant pointed a shotgun at him through the open SUV door and yelled, "What's up ese." This caused the man to dive for cover. As the SUV continued down the street with its lights off, defendant shot the victim.

---

[2] Lemus was a co-defendant charged with murder; she was driving the SUV during the drive-by shooting that killed the victim. Prior to defendant's trial, she pled guilty to voluntary manslaughter.

## 2. *There was no error*

The People contend that defendant has forfeited this argument by failing to object to the evidence. We need not address this issue because defendant's argument fails on the merits; admitting the reference to Hemet Trece was proper.

Relevant evidence is defined in Evidence Code section 210 as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." The test of relevance is whether the evidence tends "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent or motive. (*People v. Bivert* (2011) 52 Cal.4th 96, 116-117.) Only relevant evidence is admissible, and, except as otherwise provided by statute, all relevant evidence is admissible. (Evid. Code, §§ 350, 351.) "[T]he trial court has broad discretion to determine the relevance of evidence." (*People v. Cash* (2002) 28 Cal.4th 703, 727.) This discretion extends to evidentiary rulings made pursuant to Evidence Code section 352. (*People v. Tully* (2012) 54 Cal.4th 952, 1010.)

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.] Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on

5

appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125, italics in original.) It is defendant's burden on appeal to establish an abuse of discretion and prejudice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

In this case, the evidence was relevant and highly probative. Defendant had previously lived on Inez Street, which is close to the apartment complex on Alessandro Street. Individuals who lived in the Alessandro apartment complex knew Lemus, Becerra and defendant; one of the witnesses was the mother of Becerra's child. After the confrontation with Becerra and Lemus at the Depot Deli, Ruben A. and his friends must have returned to the Alessandro Street apartment complex. It is reasonable to infer that Becerra, angered by the Depot Deli incident, had Lemus drive him to the Alessandro apartment complex. Becerra then yelled Hemet Trece and obscenities in front of the apartments and warned that he would return.

Lemus and Becerra returned to their home and woke up defendant. Instead of brushing off the confrontation that occurred at Depot Deli, defendant worried about his reputation and what would happen the next time he or Lemus was seen by these individuals. He refused to allow the insult suffered by his fiancée and brother to go unaddressed. Arming himself with a shotgun, defendant returned to the Alessandro apartment complex with Lemus and Becerra.

The fact that Becerra yelled Hemet Trece, which a detective explained was a "commonly known criminal street gang" in Hemet, was relevant to help explain why

6

defendant would react as he did upon learning of the Depot Deli incident, instead of letting the incident go. (See *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1168.) Here, in the middle of the night, after being awakened and told about the Depot Deli incident, defendant's reaction was to get a shotgun, travel the short distance to the Alessandro Street apartments, and commit a drive-by shooting; killing an unarmed 14-year-old boy. The yelling of a criminal street gang's name displayed a mindset that slights or offenses, regardless of how minor, would not go unaddressed, but would be avenged. (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.)

Moreover, this evidence also countered defendant's claim that he fired the shotgun to defend himself. The evidence showed that the SUV drove down the street with its lights off. Defendant did not merely point the shotgun out the window to "scare" the people in the apartments' front yard. He kicked open the SUV door, allowing him to fully wield the weapon. This evidence, coupled with the calling out of a criminal street gang's name, showed that defendant intended to kill. This was not a case of self-defense.

Notwithstanding defendant's argument to the contrary, as discussed above, the evidence was relevant and highly probative to show defendant's motive for committing the drive-by shooting.

The analysis does not end there. We now need to determine whether the probative value was substantially outweighed by the probability that the admission necessitated undue consumption of time or created a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid. Code, § 352.)

7

Here, the admission of the evidence did not necessitate undue consumption of time. As discussed above, the evidence showed that defendant's brother yelled "Hemet Trece" prior to and during a drive-by shooting, and a brief explanation that this was the name of a criminal street gang in Hemet gave context to these words. Even defendant cannot argue that this necessitated an undue consumption of time during trial.

Also, there was no substantial danger of undue prejudice, confusing the issues or misleading the jury. Here, instead of confusing the issues or misleading the jury, the evidence clarified the issue. Instead of allowing the jury to speculate as to what "Hemet Trece" meant, the trial court properly permitted a brief explanation that it was the name of a criminal street gang in Hemet. The trial court carefully limited the detective's testimony to just this explanation, nothing more. Additionally, as will be discussed in more detail below, there was no undue prejudice as the gang reference was presented to explain defendant's mindset in returning to the apartments to avenge what he believed to be an insult to his fiancée and brother at the Depot Deli. The prosecutor did not elaborate on the gang reference as to color defendant as a gang-banger. Here, the evidence was clear that defendant fired shots in a callous manner. There was no substantial danger of undue prejudice.

Even assuming that the trial court erred in admitting the evidence, the error was harmless. The People contend that the *Watson* standard of review applies. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Defendant contends that the federal standard applies under *Chapman v. California* (1967) 386 U.S. 18, 23. However, most evidentiary errors do not rise to the level of a constitutional violation because they do not affect the

8

fundamental fairness of a trial.  (*People v. Boyette* (2002) 29 Cal.4th 381, 428 [*Watson* standard applies to prejudicial error analysis for state law errors, while beyond a reasonable doubt standard of *Chapman* applies to federal constitutional errors].)  Absent fundamental unfairness, the state law error in admitting evidence is subject to the traditional *Watson* test.  (*People v. Earp* (1999) 20 Cal.4th 826, 878; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)  Here, the alleged error did not render defendant's trial fundamentally unfair.  Hence, the *Watson* standard applies.

Defendant contends that the admission of this evidence was prejudicial because without this evidence, the jury could have accepted defendant's self-defense or imperfect self-defense theory.  We disagree.  The evidence regarding the reference to Hemet Trece was brief and tangential.  The evidence that defendant armed himself and went back to the Alessandro apartments – after he, his fiancée and brother were all safe – does not support his self-defense theory.  As the prosecutor pointed out during closing argument – as presented in the evidence during the trial – (1) defendant shot and killed the victim; (2) defendant fired the gun from the SUV; (3) the victim did not have a gun; and (4) defendant was at home, in a safe place, prior to the shooting – he was not being threatened by any individual prior to making a decision to come to the Alessandro apartments.

We agree with the prosecutor's analysis regarding self-defense:  "I think that when you talk about self-defense, you are talking about something that's fundamental to who we are, the ability to defend ourself [sic] against others, the ability to defend our family, our friends, against lethal force being used against us.  It's fundamental to who we are as

9

Americans. It's fundamental to who we are as human beings, the idea that we can defend ourself [sic]. Without that, we are really not free. [¶] That's why I take exception to self-defense being used in a situation where somebody rolls up to somebody else's house, kicks open the back door of their car, and points a loaded shotgun at somebody and then claims I'm the victim. I'm defending myself. Because that's now what the self-defense law was created for, and the law recognizes that, and it has these principles that limits its usefulness. One of those principles, the most important principle I think, is that you can't be what is called the initial aggressor and then claim self-defense. It doesn't make sense."

Nowhere during closing argument does the prosecutor mention "Hemet Trece" or any gang affiliation. During his rebuttal, however, the prosecutor did mention that defendant's brother came by and yelled "Hemet Trece, we'll be back[,]"{RT 291} when mentioning that defendant and his cohorts chose to return to the apartments with a shotgun *after* the initial incident at Depot Deli was over. The prosecutor did not mention any gang involvement by defendant or elaborate on Hemet Trece.

Although defendant tries to make this a "close" case where brief mention of Hemet Trece affected the outcome of the case, we find nothing in the record to support this argument. Here, because defendant has failed to establish a reasonable probability of a more favorable outcome absent its admission, any alleged error in admitting this evidence is harmless. (*People v. Coddington* (2000) 23 Cal.4th 529, 587-588, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

10

# IV

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____
J.

We concur:

RAMIREZ _____
P. J.

CODRINGTON _____
J.